**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE FRITCHER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ED ARMENTO, Forest Supervisor; RANDY MOORE, Regional Forester; MARY WUESTER, Forest Service Employee,<br><br>　　　　Defendants. | Case No. 1:12-CV-02033-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |

**Screening Order**

Plaintiff Julie Fritcher, proceeding *pro se* and *in forma pauperis*, filed her complaint on December 14, 2012. The matter was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-304. On February 14, 2013, the Court dismissed her complaint with leave to amend. Plaintiff filed her First Amended Complaint on April 15, 2013. The undersigned finds that Plaintiff cannot state a claim and recommends the action be dismissed with prejudice.

**I.　　Screening Requirement**

The Court must dismiss a complaint filed by a plaintiff proceeding *in forma pauperis* if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e); *Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (applies to civil cases). The standard for failure to state a claim derives from Rule 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). That rule in turn relies upon Rule 8(a), which provides:

A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

"Each allegation must be simple, concise, and direct." F.R.Civ.P. 8(d).

This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotations omitted). The complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). It falls short of this standard if it either fails to allege a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir.1984). While the Court must accept the factual allegations as true, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969), the allegations must be factual in nature. Legal conclusions can provide the framework of a complaint, but the Court need not accept them as true. *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009).

## II. Plaintiff's Original Complaint

In her original complaint, Plaintiff alleged that, on or about December 16, 2011, she met with Defendant Ed Armenta (misspelled as Armento), Inyo National Forest Supervisor, to lodge a complaint against Defendant Mary Wuester, a Forest Service employee. She also complained to Defendant Randy Moore, Regional Forester of the Pacific Southwest Region of the Forest Service. Almost a year later, she discovered that Armenta and Moore had not investigated her complaint.[1]

---

[1] Plaintiff clarifies that she is not suing the United States Forest Service. The Court has struck the name from the caption.

2

In dismissing this complaint, the Court explained that Plaintiff described so little about what happened that it was hard for the Court to even be sure what her claim was about. The Court told her to say more about what each individual defendant did to her. It reminded her that the things they did must have been more than just unfair to her, they must have violated a law. Finally, the Court reminded Plaintiff that, should she choose to amend her complaint, she should not raise new, unrelated claims or claims that had been dismissed with prejudice in earlier lawsuits.

### III.  Plaintiff's First Amended Complaint

Before discussing Plaintiff's allegations, the Court begins with some context about Plaintiff's record over the span of at least two decades of suing leaders of her tribe, the Lone Pine Paiute-Shoshone (population 350). The earliest case that the Court can locate is an administrative case relating to a tribal election held in 1991. *Naylor et al. v. Sacramento Area Director*, 23 IBIA 76 (1992). Ms. Wuester ran for Vice-Chairperson and Plaintiff ran for Treasurer. Both candidates won, but there was a question of whether the election was conducted properly. Dissenters held a second, conflicting election. The judge found that both elections were invalid. Although it is not clear whether Plaintiff ever became Treasurer, Ms. Wuester did eventually become Vice-Chairperson.

Looking back on the resultant chaos, an Administrative Law Judge in a later case observed that "[t]he Tribe suffer[ed] from deep internal divisions which, during the past [four] years have seriously affected the Tribe's ability to function. The Tribe remains split into two factions, which are almost equally divided. The factions have little, if anything, to do with each other, apparently to the point of not even attending the same meetings." *Thomas Schwab, et al. v. Sacramento Area Director*, 25 IBIA 205, 206 (1994) (quotation marks omitted). This litigation, twenty years old, vaguely foreshadowed the issues in the four cases that Plaintiff has filed in Federal court in the last two years.[2] Once again, Plaintiff has come to Court to question Ms. Wuester's political position. This time, Plaintiff is challenging Ms. Wuester's rise in late 2011 from Tribal Vice-Chairperson to Tribal Chairperson and Tribal Administrator.

Plaintiff objects to this change because Ms. Wuester is also an employee of the United States Forest Service. In Plaintiff's view, this creates a potential conflict of interest, violates principles of

---

[2] The other three cases are 1:11-cv-01900; 1:11-cv-02071; and 1:11-cv-02072.

3

Federal non-involvement in Indian affairs, and makes her ineligible for the tribal job. For this reason, Plaintiff challenges whether Ms. Wuester has complied with the conflict of interest and disclosure rules under the Ethics in Government Act, 5 U.S.C. App. § 101, *et. seq.*, and related regulations. Furthermore, she alleges that Ms. Wuester exploited these conflicts. For example, she received a paycheck as tribal administrator. This money ultimately came from her other employer, the Federal government. As another example, there is a Smokey Bear sign outside the tribal office. Plaintiff does not directly state that Ms. Wuester put it there, but she does express her concern that "People including Forest Service people would show up at the tribal office thinking it was the Forest Service Office," or that it might be illegal to display the sign without an agreement with the Forest Service. As another example, "The Forest Service gave federal funding to the Lone Pine Tribe. Public funds were used to expenditure on pizza and food items [sic]." Ms. Wuester also wore her Forest Service uniform to tribal officers' meetings. Plaintiff also states that Noreen Sellberg, who is also both a member of the tribe and an employee of the Forest Service, called her stupid at a public meeting. In July 2011, a resolution was passed by the tribe's General Council (i.e., adult population) stating that Plaintiff would be allowed to vote in elections, but she could not attend either the ballot-counting gathering after the closing of the polls or the special tribal meeting that followed. Plaintiff has attached a letter of May 2012, signed by Ms. Wuester and other tribal officers and addressed to the tribe's Elections Committee, which references this resolution and states that it would remain in effect for purposes of an upcoming election. Doc. 7, at Exhibit 7.

### 1. <u>Conflict of Interest Arising When Wuester Became Tribal Chairperson</u>

Once Ms. Wuester became tribal chairperson, Plaintiff states that her actions as a Forest Service employee violated certain Federal government rules relating to noninterference in tribal matters. However, Plaintiff cannot state a claim under these rules. First, she refers to the section of the Forest Service Manual on external relations. This is a policy that Forest Service employees should receive training on the responsibilities of the Federal government towards tribes. *See* FSM 1563.03. Even if Plaintiff had alleged a violation of this provision, "the [Forest Service] Manual and Handbook do not have the independent force and effect of law." *W. Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996). Similarly, Plaintiff cannot sue Ms. Wuester for violations of

Executive Order 13175, because this document expressly provides that it "is intended only to improve the internal management of the executive branch, and is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person." Executive Order 13175, *Consultation and Coordination With Indian Tribal Governments*, 65 Fed.Reg. 67249 (Nov. 9, 2000).

Plaintiff also suggests that Ms. Wuester's actions as a Forest Service employee violated the "General Council Concept." She refers to a half-page, large-type document which lists the "six (6) essential principles necessary to establish a government." Plaintiff has repeatedly referred to this document in past lawsuits before this Court. Most recently, the Court stated that it would not consider this document unless she showed why it was a legal authority. Plaintiff now refers the Court to the 1992 administrative case on the contested election mentioned above, in which this document was submitted as an exhibit by an unidentified party. *Naylor*, 23 IBIA 76. However, the judge in that case considered this document and concluded that it had no legal authority. Although it stated useful "principles," it was not a "controlling document." *See id.*, citing *Allen v. Navajo Area Director,* 10 IBIA 146, 163-65 1982 (describing requirements for BIA rulemaking). The judge also explained that electoral disputes are tribal affairs, or, in rare cases, handled by BIA administrative courts. No event in the last two decades suggests that the Court should reach a different conclusion. Likewise, the Court has no use for the organizational chart of the tribe, which Plaintiff also provides as authority. Doc. 7, at Exhibit 3.

Plaintiff states that she has "the right to self-monitor the government in regards to the accountability of federal fund [sic]." Regardless of what rights she may have to monitor the tribe's spending, she has not shown why the Court should be involved in the tribe's spending. Pleadings must raise the right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. The fact that tribal officials spent money on "pizza and food items" and then failed to produce a Federal grant for this expenditure does not cross this level of speculation.

As to Plaintiff's remaining claims: No law prevents Ms. Wuester from wearing a Forest Service uniform while conducting business at the tribe, and no law prevents her from holding a Forest Service job and a paid tribal position at the same time. Assuming, without deciding, that

Plaintiff could bring a lawsuit to enforce a violation of the regulations governing the use of Smokey Bear and that Ms. Wuester was the person who put that sign up, no violation occurred here. Official Smokey Bear campaign materials "may be used without express approval where such use is solely for the purpose of increasing public information regarding forest fire prevention." 36 CFR 271.1.

Plaintiff states that Noreen Sellberg, a nondefendant and also a Federal government employee, called her stupid at a public meeting. As the Court explained in its prior screening order, Plaintiff cannot sue in this Court simply because a person was unfair to her. The person must have also violated a law. Plaintiff has not alleged facts that show that Ms. Sellberg was doing anything more than exercising her right to free speech.

## 2. **Disclosure Forms**

Plaintiff wants to know whether Defendant has completed certain Federal government conflict-of-interest forms and demands to see these forms. Her point seems to be that, because Ms. Wuester participated in the Forest Service's conflict-of-interest procedure, these forms would have precluded her from having "outside activities," i.e. serving as Chairperson of the tribe. "Mary Wuester was a government employee 1st," so her acts as tribal chairperson merely "caused confusion to the public," i.e. were invalid.

One of the reports that Plaintiff wants to see is Ms. Wuester's Public Financial Disclosure Report, OGE 278 (formerly SF 278). However, it is unlikely that Ms. Wuester completed this form. It is only applicable to senior level government officials, including the President, Vice President, and the Postmaster General. Knowing that Ed Armenta was Ms. Wuester's supervisor, the Court infers that Ms. Wuester did not have this level of responsibility. A similar form, OGE 450, may or may not apply to Ms. Wuester, and certain employees of the Department of Agriculture who fill out the OGE 450 must also, before engaging in outside employment, fill out a USDA OE-101 and obtain written supervisory consent. 5 C.F.R. § 8301.102. However, the information in these forms is "confidential and shall not be disclosed to the public." 5 U.S.C. 107. Furthermore, the regulations provide that failure to follow the rules related to these disclosure forms "does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person." 5 C.F.R. § 2635.106; see *Scherer v. United States*,

241 F. Supp. 2d 1270, 1285 (D. Kan. 2003). Therefore, Plaintiff cannot state a claim relating to whether Ms. Wuester completed these forms.

In any event, despite Plaintiff's wishes, the Federal government's conflict-of-interest rules would not have had the effect that Plaintiff desired. As Plaintiff herself notes throughout her complaint, there are limits to the Federal government's powers. The government—and this Court—cannot interfere with what government employees choose to do outside of work, particularly when that would mean interfering in tribal matters. It can only set the terms of their employment with the government. That, in turn, is an internal government matter which Plaintiff cannot interfere with.

### 3. **Exclusion From Meetings**

Plaintiff alleges that Ms. Wuester excluded her from tribal meetings. Plaintiff made this same complaint in a previous lawsuit which she filed in this Court in December 2011. (In that case, Ms. Wuester was sued in her capacity as the tribal vice president.) The Court in that case first dismissed the complaint without prejudice, then ultimately dismissed the case with prejudice due to Plaintiff's refusal to prosecute the case and comply with the Court's orders.

Potentially, the fact that the previous complaint was dismissed with prejudice could be grounds for reaching the same result here. "Even without a determination which is literally on the merits, a denial with prejudice may be a final judgment with a res judicata effect as long as the result is not unfair." *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593 (9th Cir. 1985). However, the Court will address the issues raised. As the Court explained in its earlier dismissal,

> [W]hile Plaintiff's complaint does not name the tribe directly, it does allege that at all relevant times, named Defendants acted in their capacity as tribal officers and members. Under Ninth Circuit law, tribal immunity has been extended so that a lawsuit cannot be brought indirectly against a tribe by suing its officers or even its employees. *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (finding tribal immunity to extend to not only tribal officials but also to tribal employees "acting in their official capacity and within the scope of their authority."). … [I]t appears from the allegations of Plaintiff's complaint, that tribal sovereign immunity extends to these Defendants and the Court does not possess subject matter jurisdiction to hear Plaintiff's claims. …
>
> [Footnote 5:] Moreover, as the Ninth Circuit has recognized, "[t]he Supreme Court's policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims." *Selam v. Warm Springs Tribal Correctional Facility*, 134 F.3d 948, 953 (9th Cir. 1998). Though Plaintiff states under information and belief that Defendants "do not maintain a tribal court system of any kind," (Doc. 1 at 5), it nevertheless also appears as though Plaintiff has failed to make any effort to raise her claims before the appropriate tribal authority.

Here, instead of suing Ms. Wuester as a tribal officer, Plaintiff has sued her as a Forest Service officer, insisting that Ms. Wuester is a government employee "first." Whatever that means, Plaintiff's claim relates to things Ms. Wuester did as a tribal officer. Accordingly, the Court lacks subject matter jurisdiction to hear this claim.

### 4. Claim Against Armenta and Moore

Plaintiff complained of the above-mentioned issues to a number of personnel at the Forest Service, including the two other defendants in this case: Ms. Wuester's supervisor, Ed Armenta, Inyo Forest Supervisor, and Mr. Armenta's supervisor, Randy Moore, Regional Forester of the Pacific Southwest Region of the Forest Service. Plaintiff states that a "civil rights violation" occurred when these Forest Service employees, who "knew [Ms. Wuester] did not sign the outside activity forms, despite having outside activities with the tribe," nevertheless "appeared to take non-action of the civil rights complaint." That is, the claim refers to their not following up on her complaint. These actions constituted "discrimination and reprisal."

The Court has explained why the complained-of activities by Ms. Wuester were not unlawful. Even if they were, Plaintiff has failed for a second time to allege why the non-actions by Armenta and Moore were unlawful.

## IV. Conclusion and Order

Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted). Dismissal of a *pro se* complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir.1980)).

The wrongs that Plaintiff complains of cannot be addressed by a Federal court. They are

8

either private wrongs or are reserved to other jurisdictions. Because Plaintiff cannot cure her complaint, the undersigned HEREBY RECOMMENDS that this action be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the Honorable Lawrence J. O'Neill, United States District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** of being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  5/6/2013                          /s/ SANDRA M. SNYDER
                                          UNITED STATES MAGISTRATE JUDGE